IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-449-RJ

LAKEN LEE LOUDERMILK,

    Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

    Defendant.

<u>O R D E R</u>

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-12, -15]. Claimant Laken Lee Loudermilk ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant filed a response to the Commissioner's brief, [DE-16], and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant filed applications for child's insurance benefits and a period of disability, DIB, and SSI on September 4, 2020, alleging disability beginning October 29, 2004, which was later amended to September 4, 2020. (R. 17, 235–51, 264). The claims were denied initially and upon reconsideration. (R. 17, 68–135). A telephonic hearing before the Administrative Law Judge

("ALJ") was held on August 16, 2022, at which Claimant, represented by a non-attorney; Claimant's mother; and a vocational expert ("VE") appeared and testified. (R. 17, 42–67). On January 12, 2023, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–41). On June 30, 2023, the Appeals Council denied Claimant's request for review, (R. 1–6), and Claimant filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

2

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the amended alleged onset date. (R. 20). Next, the ALJ determined Claimant had the severe impairments of all disorders of the pituitary gland (except malignant neoplasm); depressive, bipolar, and related disorders; all disorders of the thyroid gland (except malignant neoplasm); migraine; other disorders of the gastrointestinal system; anxiety and obsessive-compulsive disorders; and borderline intellectual functioning. *Id.* At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–23). The ALJ found that Claimant experienced moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21–22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations:

> occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasional work with unprotected heights and moving mechanical parts; restricted to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); for use of judgment, is limited to simple work-related decisions; can have occasional contact with supervisors and coworkers but no contact with the general public; and for changes in work setting, is limited to simple work-related decisions.

(R. 23–34). In making this assessment, the ALJ found Claimant's statements about her limitations

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

to be not entirely consistent with the medical and other evidence of record. (R. 24). At step four, the ALJ concluded Claimant had no past relevant work. (R. 34). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. (R. 34–35).

## V. DISCUSSION

Claimant contends the ALJ erred by failing to properly evaluate the medical opinions of the consultative examining psychologist, Lori Downing, Psy. D.; treating mental health nurse practitioner, Benjamin Jeffrey; and the state agency medical consultants, Michael Koch, M.D. and Cheryl Arenella, M.D. Pl.'s Br. [DE-12] at 7–14; Pl.'s Reply [DE-16] at 1–5. The Commissioner contends the ALJ properly evaluated the medical opinions and administrative findings of the state agency consultants, and the RFC is supported by substantial evidence. Def.'s Br. [DE-15] at 7–19.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how

5

the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920(c)(1)–(5). The most important factors are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a).

Claimant testified at the administrative hearing to crippling anxiety and depression,

6

resulting in uncontrollable crying and panic attacks that were not improved with medication. (R. 49–50). At the close of the administrative hearing, the ALJ ordered mental and physical consultative examinations "given the severity of some of the symptoms and issues" that Claimant described. (R. 66).

On September 1, 2022, Dr. Downing conducted a comprehensive clinical psychological evaluation of Claimant. (R. 1770–73). Dr. Downing provided the following comments related to Claimant's daily activities and functioning:

> Ms. Loudermilk reported she lives in a house with her parents. She reported she is able to attend to personal hygiene on her own. The claimant reported she always goes out with her parents and does not attend appointments and obligations on her own. She reported she relies on her mother for reminders about her obligations as well as reminders about medications and prompts to take them. The claimant reported she gets help with managing her personal business as well. Ms. Loudermilk presented today as significantly limited in what she is able to do independently as a result of her mental health issues.

(R. 1771). Overall, Dr. Downing concluded that Claimant could understand, retain, and following instructions; sustain the attention and concentration needed to perform simple and repetitive tasks; relate to others in an effective and appropriate manner; and had a limited ability to tolerate stress and pressure in the workplace. (R. 1772). The ALJ considered Dr. Downing's opinion and found it to be persuasive. (R. 29–30, 32–33). The ALJ explained that Claimant,

> continued to have severe depression and anxiety despite her medications, but her symptoms and the objective findings support she can understand, remember, and carry out simple instructions. She is limited to simple work-related decision and limited interactions with others. Dr. Downing's opinion the claimant has a mild limitation in making judgments on simple work-related decisions, would have difficulty being alone, and has a limited ability to tolerate stress are accounted for in the residual functional capacity's limitations on simple, routine, and repetitive tasks with limited interactions with others and only simple work-related decisions.

(R. 33).

7

Claimant contends that, having found Dr. Downing's opinion to be persuasive, the ALJ erred in failing to account for Dr. Downing's opinion that Claimant presented as "significantly limited in what she is able to do independently as a result of her mental health issues" or to explain why no accommodation was needed. Pl.'s Br. [DE-12] at 8–9. The court agrees. In *Ezzell v. Berryhill*, the Fourth Circuit found error where the ALJ gave significant weight to a medical opinion that indicated the claimant required a cane and was severely impaired in the ability to move about but then implicitly rejected that opinion, without discussion, by concluding that the claimant failed to demonstrate the inability to effectively ambulate on a sustained basis. 688 F. App'x 199, 201 (4th Cir. 2017); *see also Adams v. Comm'r of Soc. Sec.*, No. 3:20-CV-00224-RJC, 2022 WL 634213, at *3 (W.D.N.C. Mar. 3, 2022) ("Courts in this district have further explained 'that an ALJ cannot implicitly reject portions of a doctor's opinion [that the ALJ found persuasive] that are inconsistent with her RFC without' adequately explaining her reasoning.") (citing *Clark v. Berryhill*, No. 5:17-CV-143-DCK, 2018 WL 3014408, at *5 (W.D.N.C. June 15, 2018)).

Here, Dr. Downing observed that Claimant is always accompanied by her parents, does not attend appointments or obligations alone, and presented as "significantly limited in what she is able to do independently as a result of her mental health issues." (R. 1771). The ALJ acknowledged as much, noting Claimant's "very co-dependent and unhealthy attachment to her parents" associated with her ongoing anxiety and personality disorder, and found Dr. Downing's opinion persuasive. (R. 29, 33). While the ALJ stated that Dr. Downing's opinion that Claimant's limitations in making judgments, tolerating stress, and difficulty being alone were accounted for in the RFC's limitations on simple, routine, and repetitive tasks with limited interactions with others and only simple work-related decisions, the court is unable to trace the ALJ's reasoning as

8

to how these limitations account for Claimant's co-dependency on her parents and significant limitation in independently functioning. *See Alonna A. v. Kijakazi*, No. CV 22-3115-CDA, 2023 WL 8373378, at *4 (D. Md. Dec. 1, 2023) (the ALJ's failure to explain why the limitations opined by sources whose opinions were found to be persuasive were not fully incorporated into the RFC "deprives the ALJ's decision of the requisite 'logical bridge' between the evidence and the RFC that would allow this Court to trace the ALJ's reasoning") (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

The Commissioner argues that Dr. Downing did not indicate that Claimant would require special supervision in the workplace or would need someone present with her continuously while working. Def.'s Br. [DE-15] at 11–12. However, the ALJ reasonably interpreted Dr. Downing's opinion to conclude that Claimant "would have difficulty being alone" and indicated that he accounted for the limitation, so the Commissioner's reinterpretation of Dr. Downing's opinion is unpersuasive and post-hoc justifications not made by the ALJ are impermissible. *See Cumbee v. Kijakazi*, No. 7:20-CV-59-FL, 2021 WL 4447625, at *4 (E.D.N.C. Sept. 28, 2021) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020)). The Commissioner also suggests that Claimant was dependent on her parents not because of her underlying impairments but rather because of her learned dependence on her parents for everything. Pl.'s Br. [DE-15] at 12 (citing R. 1777). Again, this is post-hoc justification that conflicts with the ALJ's interpretation of Dr. Downing's report that "[i]t was noted that some of her ongoing anxiety is associated with her personality disorder issues which seem to best account for poor coping skills and very co-dependent and unhealthy attachment to her parents." (R. 29). Dr. Downing also expressly attributed Claimant's significantly limited ability in what she could do independently to her mental

9

health issues. (R. 1771). Finally, the ALJ also noted from the medical records that Claimant reported having panic attacks related to her parents going away for two days, (R. 29, 1045), and there are repeated references in the medical records to Claimant's lack of independence, severe worsening separation anxiety and complete lack of independence, and co-dependency on her parents, *see, e.g.*, (R. 827, 886, 888, 898, 916).

Because the court cannot trace the ALJ's reasoning as to how the RFC limitations account for Claimant's co-dependency on her parents and significant limitation in independently functioning, the matter must be remanded for further consideration. Given that this issue alone is dispositive, the court declines to address the remaining assertions of error.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

So ordered, the 28 day of August, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge

10